## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **H.L., F.L., and P.L.**

**No. 17-1056** (Webster County 16-JA-77, 78, and 79)

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.L., by counsel Jared S. Frame, appeals the Circuit Court of Webster County's November 8, 2017, order terminating her parental rights to H.L., F.L., and P.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian") Mary Elizabeth Snead filed a response on behalf of F.L. and P.L. in support of the circuit court's order. The guardian Teresa C. Monk filed a response on behalf of H.L., also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she only made one mistake during her improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2016, the DHHR filed an abuse and neglect petition against petitioner, alleging that she had abused and/or neglected her children H.L., F.L., and P.L. At the time the petition was filed, petitioner was dating and living with T.W. The DHHR alleged that it had initiated an investigation into allegations that H.L. sexually assaulted his sister, P.L. During an interview, F.L. disclosed that she saw T.W. go into H.L.'s bedroom and threaten to strangle him and that T.W.'s brother had to forcibly remove T.W. from the situation. Petitioner was present at the time and did nothing to stop the altercation. H.L. disclosed that T.W. was easily angered and "yells, screams and threatens" him. Further, H.L. reported that T.W. told petitioner that he was going to abduct the children and that petitioner and T.W. fought a lot. Petitioner obtained a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

restraining order against T.W., but subsequently dismissed it. The petition also alleged that H.L. reported that he had been assaulted by one of petitioner's previous boyfriends, a registered sex offender. Based upon this information, the DHHR alleged that petitioner failed to protect the children from domestic violence and exposed them to a sex offender and possible sexual abuse.

The circuit court held an adjudicatory hearing in December of 2016, during which petitioner stipulated to the allegations contained in the petition. Specifically, petitioner admitted to allegations surrounding domestic violence in the home, that she failed to protect the children, that T.W. screamed at the children and threatened to abduct them, and that she dismissed restraining orders against T.W. and the children's father. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. Petitioner was granted supervised visitation so long as she remained drug and alcohol free and was ordered to comply with any conditions imposed.

In March of 2017, the circuit court held an initial dispositional hearing wherein petitioner was granted a post-adjudicatory improvement period. The circuit court ordered petitioner to (1) participate in parenting and adult life skills classes, (2) attend counseling sessions, (3) remain drug and alcohol free, and (5) maintain her home in a fit and suitable condition.

The circuit court held a final dispositional hearing in October of 2017, during which several witnesses testified as to petitioner's noncompliance with her improvement period. A DHHR worker testified that petitioner failed to timely provide her medication for a pill count or to provide the prescription. A Child Protective Services ("CPS") worker testified that the DHHR recommended termination of petitioner's parental rights because she failed to comply with the terms of her improvement period. Against the circuit court's order, petitioner had three prescriptions filled. However, petitioner only tested positive for the medication one time, despite testing three times per week and providing approximately forty-eight drug screens. Further, the CPS worker testified that petitioner continued a relationship with T.W. in blatant disregard of the wishes of her children, all of whom became upset whenever petitioner and T.W. were in contact. In fact, the CPS worker testified that H.L. became very upset at a supervised visit to which petitioner brought T.W. Finally, the CPS worker testified that petitioner's apartment was not suitable for the children due to its small size and insufficient number of bedrooms.

Petitioner testified that she complied with all of her counseling and parenting classes, obtained employment, and attended all scheduled visits but one with the children. Regarding her prescriptions, petitioner testified that she had them filled for back pain and that she did not test positive for the medications because she only took them on Fridays and that they were out of her system by her Tuesday drug screens. Petitioner admitted that she continued to associate daily with T.W. despite having obtained a restraining order against him for threatening to kill her and having him arrested for burglary. After hearing evidence, the circuit court found that petitioner had not been truthful with the court and continued to lie in order to cover up previous lies. Although she remained drug and alcohol free, the circuit court noted that she continued to have her prescriptions filled and that she testified that she took the medication. Further, petitioner continued contact with T.W. against her children's wishes and despite the fact that he threatened bodily harm to her and H.L. As such, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that

termination was in the children's best interest. It is from the November 8, 2017, dispositional order terminating petitioner's parental rights that she appeals.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights. Specifically, petitioner argues that she was fully compliant with the terms and conditions of her improvement period and that her only mistake was lying to the circuit court about her prescription medications, which were legally prescribed by a medical professional. According to petitioner, she was able to take a pill on a Friday and the medication would be out of her system by her drug test on a Tuesday. Further, she asserts that no evidence was presented that she was selling her prescription medications or otherwise disposing of the pills. We find petitioner's argument to be unpersuasive. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial

_____

[2]Additionally, the father's parental rights were terminated during the proceedings below. F.L. and P.L. were placed in a foster home and the permanency plan is for adoption by the current foster family. H.L. is participating in a program at New River Ranch and the permanency plan is for adoption after his successful completion of the program.

diminution of conditions which threatened the health, welfare or life of the child .
. . .

The record demonstrates that petitioner failed to follow through with rehabilitative efforts designed to reduce or prevent the abuse or neglect of her children. As part of her improvement period, petitioner was instructed to remain drug and alcohol free and maintain suitable housing. The evidence established that petitioner had three prescriptions filled against the circuit court's order throughout the proceedings below. However, petitioner did not test positive for these medications despite testifying that she was taking them. In fact, petitioner provided drug screens three times a week, approximately forty-eight total screens, and only tested positive for her prescription medication once. Further, when requested by the DHHR, petitioner failed to provide any prescriptions and failed to provide her pills to be counted. The circuit court found that petitioner's explanations regarding her prescription medications were untruthful and that she continued to lie in order to cover up previous falsehoods. Regarding housing, a CPS worker testified that petitioner's home was too small to accommodate all three of the children. Finally, petitioner continued to maintain a relationship with T.W. against her children's wishes and despite the fact that he previously threatened to harm her and her children.

Despite this evidence, petitioner argues that she substantially complied with the terms of her improvement period. We have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). According to the guardian of the children F.L. and P.L., they do not wish to return to their mother's custody and the guardian believes that termination of petitioner's parental rights is in the children's best interests. We have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the evidence outlined above, we find no error in the circuit court's decision to terminate petitioner's parental rights as there was no reasonable likelihood that she could correct the conditions of abuse and/or neglect and the children's welfare necessitates termination.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 8, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 14, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

5